IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

         Plaintiff,

v.

DEBORAH L. KISTNER, et al.,

         Defendants.

Case No. 2:11-cr-00283

JUDGE GREGORY L. FROST

## OPINION AND ORDER

This matter came on for a hearing this 4th day of January, 2013 upon Defendants' Joint Motion to Suppress Evidence and Request for Evidentiary Hearing (ECF No. 96) filed on December 21, 2012 and upon Government's Response (ECF No. 101) filed on December 28, 2012. At the hearing the parties presented oral arguments regarding whether an evidentiary hearing should be conducted. The Court finds that Defendants failed to meet the burden of making a "substantial preliminary showing sufficient to trigger the need for an evidentiary hearing" pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978). As a result, Defendants' Request for an Evidentiary Hearing is **DENIED** and Defendants' Motion to Suppress Evidence is also **DENIED**.

    **I.**    **FACTS**

The facts provided herein are drawn from the affidavit in support of the search warrant, the Motion to Suppress, and the Government's Response.

Defendants, Deborah L. Kistner and Mark A. Kistner, as well as others were investigated by the Internal Revenue Service Criminal Investigation Division regarding their alleged

involvement in mortgage fraud activities.  The investigation resulted in a Superseding Indictment filed on June 26, 2012 charging these two Defendants with Conspiracy to Commit Bank and Wire Fraud, Conspiracy to Commit Money Laundering, Wire Fraud Affecting Financial Institutions, Bank Fraud, and Money Laundering.

On September 27, 2010, U.S. Magistrate Judge Terence P Kemp issued a federal search warrant for the residence of Defendants located at 3175 Benbrook Pond, Hilliard, Franklin County, Ohio.  Agent Anne C. DeSantis (now Nightingale) provided a fifteen page affidavit extensively outlining the investigation.  Based upon the affidavit Magistrate Judge Kemp issued the search warrant and authorized the seizure of eleven categories of evidence.  A search was conducted and an eight page inventory of items seized was filed.

Defendants' argue in their Joint Motion to Suppress that certain items "recovered in the search were not within the scope of the warrant" and that the incriminating nature of those items were not immediately apparent so as to fall within the plain view doctrine.  Additionally, Defendant's maintain that "certain documents that may have established probable cause in the issuing of the September 27th search warrant were not discovered until after the search had taken place."  Specifically, Defendants argue that a checkbook belonging to Aubrie Kistner, the defendants' daughter, was seized and the seizure of that checkbook was not authorized by the search warrant.  Defendants also complain that they financial documents referred to in the affidavit did not include the main bank account of Premier Title at Metro, LLC and that the records from that bank account which were recovered later are the financial document that forms the basis for the Government's theory of criminal activity.

The Government argues that there is more than sufficient information in the affidavit to demonstrate probable cause for the search and seizure.  Further, the Government provided additional facts concerning the seizure of the daughter's checkbook that, as the Government maintains, clearly places the checkbook within the category of documents to be seized.

The Government's Response to the Motion to Suppress outlines the sources and records relied upon by Agent Nightingale in her affidavit in support of the issuance of the search warrant.  The sources and records included interviews with confidential sources, interviews with Dr. William Grant who was a purchaser of some of the subject properties as well as his records, an interview with Defendant Mark Kistner, an interview with a representative of the Ohio Department of Insurance, and interview with Defendant Deborah Kistner, records from a financial institution, and documents obtained from a trash pull at Defendants' residence.  As to the checkbook, the Government supplied the Court with the facts that the checkbook was full of blank checks that had been signed by Aubrie Kistner and the checkbook was found in Defendant Mark Kistner's office on his desk.

## II.     STANDARD INVOLVED

In *Franks v. Delaware, supra* at 171-72, the United States Supreme Court held that in cases involving a search pursuant to a search warrant that:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any

nongovernmental informant.  Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.  On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.  Whether he will prevail at that hearing is, of course, another issue.

Thus a "substantial preliminary showing" is necessary to obtain an evidentiary hearing *Franks* at 171.

Also related to the analysis of this case and specifically with regard to the checkbook, it should be noted that all items seized during a validly executed search warrant, as long as they are reasonably related to the offense which formed the basis of the warrant, may be seized, even if they are not specifically described in the warrant.  *United States v. Wright*, 343 F. 3d 849, 856 (6th Cir. 2003).

### III.     ANALYSIS

Defendants, in their Joint Motion to Suppress, do not make mention of deliberate falsehood or reckless disregard for the truth.  At the hearing conducted on January 4, 2013 the Court specifically inquired of counsel what falsehoods or untruths were they relying on.  In response, counsel indicated that Defendants were not advised prior to their interviews by the IRS agent that they were the targets of a criminal investigation.  Counsel did concede that at least during one of the interviews counsel for Defendant was present.  There is absolutely no allegation of falsehoods contained in the affidavit submitted in support of the issuance of the search warrant.  Given the failure to make the necessary preliminary showing, *Franks* dictates that no hearing shall be conducted.

This Court has reviewed the affidavit in support of the issuance of a search warrant and finds that there is ample probable cause contained therein.  The Court has also reviewed the search warrant issued and finds that it fairly describes the documents and items that may be seized within the confines of the warrant.

Finally, Defendant's complain of the seizure of the daughter's checkbook.  The checkbook was found during the search in Defendant, Mark Kistner's office on his desk.  The checkbook contained several blank checks signed by Aubrie Kistner.  Defendants argue that the search warrant did not authorize the seizure of property belonging to Aubrie Kistner.  The Court disagrees.

First, the affidavit submitted by Agent Nightingale list the specific crimes that are being investigated.  Included in the list of crimes are Bank Fraud, Mail Fraud, and Money Laundering.  Agent Nightingale requested that she be permitted to seize "fruits, evidence, and instrumentalities" of the criminal offense listed.  It would, indeed, be strange if the agents were not permitted to seize the checkbook given the type of crimes being investigated.  In fact, the agents would have been derelict in their duties if they did not seize the checkbook.

Second, the checks were signed by the checking account owner and left blank.  The checkbook was presumably in the possession of Defendant Mark Kistner given where the checkbook was located.  The signed checks were negotiable instruments and therefore were "assets" of Mark Kistner.  The checkbook falls within at least three of the categories of "Property to be Seized" identified in the affidavit and search warrant.

5

IV.     CONCLUSION

Defendant failed to make any showing of deliberate falsehoods or reckless disregard for the truth in the affidavit.  They are therefore not entitled to a hearing on the Motion to Suppress.  The Court finds that the affidavit contains sufficient probable cause for the issuance of the search warrant and the search warrant was narrowly tailored to authorize only the seizure of items that had some evidentiary value to the crimes being investigated.  And, the checkbook clearly falls within the categories of items to be seized during the execution of the lawfully executed search warrant.

The Joint Motion to Suppress Evidence and Request for Evidentiary Hearing (ECF No. 96) is overruled and the same is **DENIED**.  The evidence seized during the execution of the search warrant may be utilized at trial.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　 /s/    Gregory L. Frost
　　　　　　　　　　　　　　　　　　　**GREGORY L. FROST**
　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**